Our next case in the morning is 415-0660, Harrelson v. Illinois State Police. For the appellant, Mr. Evans, for the appellant, Ms. Quinn, you may proceed. Thank you. May it please the court, Joshua Evans for the plaintiff, Joseph Harrelson. This court, or this case, comes before this honorable court today as a matter of first impression. Before this court, this case involves intricate balance between the administrative code, administrative review law, concealed carrying license review act, evidentiary rules, and the U.S. Constitution. But this case can be boiled down. Joseph Harrelson is a man who applied for a concealed carrying license. He was denied. Mr. Harrelson's position is that he is what many might consider an outsider. He doesn't fit society's mold. He has hair down to his waist, rides a motorcycle, and says what's on his mind. And that may make him skeptical of the law enforcement. And here, we receive the law enforcement injection before the concealed carry license and review board. Now, the plaintiff would posit the laws in this state and the Constitution are meant to protect people like Joseph Harrelson. People who don't fit society's mold, but are otherwise law-abiding and honest citizens. Legally speaking, Joseph Harrelson should be granted his concealed carry license for three reasons. First, the board relied upon inadmissible hearsay evidence, namely the police reports. Second, the APA violation, which was briefed. And lastly, if the court rules against Mr. Harrelson, this court is then faced with due process issues briefed. Regarding the hearsay argument, plaintiff's position is Grand Liquor Company controls the holding in this matter. And Grand Liquor Company, which was cited in plaintiff's brief. The court held that the rules of evidence in administrative review are not technical rules, but basic rules. And even though in that instance, there was a statute that said the administrative agency didn't have to follow the technical rules of evidence, the court said they would still have to follow the rules of hearsay. In this instance, the concealed carry licensing review board followed their own internal guidance relied upon the police report in denying Joseph Harrelson's license. They didn't make specific findings of fact to that effect, but that was the only evidence before the concealed carry licensing review board against Mr. Harrelson. Now, defendants cited various cases indicating that they could, in fact, rely off those police reports. One was Landers and another brief was Miles. And at page 27, defendant's counter to plaintiff's position that Grand Liquor Company controls is the extent of the rules of evidence prohibit hearsay are allowed in this context and other hearsay exceptions apply as discussed. Defendant goes on to discuss citing Landers in 8038 of the Illinois Evidence Code. But if you look at the decision in Landers, it actually states, and I'll quote the court, the CHA, which was the agency, had no evidence whatsoever that petitioner engaged in criminal activity where the outcome of his arrest was consistent dismissal of the charges. The Landers court basically said you can't use that hearsay police report when there's not a conviction. Here, we have a conviction of Joseph Harrelson for damage to property, not a conviction of domestic battery, which would have been a disqualifier under the concealed carry licensing review. But how did the property get damaged? Doesn't that make a difference? Certainly, Your Honor. And in this case, there was no stipulated finding of fact in the record to say how the property was damaged. It is the board's to show by a preponderance of the evidence that Joseph Harrelson is a danger to himself. If permitted, Joseph Harrelson would have countered the evidence and in this case, Mr. Harrelson did counter it the only way he could, which was an affidavit because there was no hearing. So Mr. Harrelson submitted an affidavit saying this wasn't a violent contention between the parties and the alleged victim supported that with an affidavit saying this wasn't violence between the parties, countering that police report. The board must have relied upon the police report to say that Joseph Harrelson threw the alleged victim's head through the wall. But they would have needed a, in any criminal case, there is a statement of fact at the end. The court says, what's the basis for this factual charge? Here there's nothing in the record that shows the court did that, shows that Joseph Harrelson admitted I threw her head through a wall, which would also be a domestic battery, as opposed to the court sorting it out in the criminal matter and deciding, or the state's attorney thereof, deciding, wait a second, he didn't do that. But there was property damage such that he can be convicted of this. So to say that Joseph Harrelson should be convicted of throwing her head through a wall is the equivalent of convicting Joseph Harrelson of domestic battery when the criminal court dismissed that and the criminal trespassed the property. So in holding Landers and Grand Liquor Company together, I think the Concealed Carry License and Review Board could certainly consider the fact that Joseph Harrelson was convicted of a misdemeanor charge of criminal damage to property. That is not a disqualifier under the Concealed Carry License and Review Act, or excuse me, the Concealed Carry Act. In the board's reply brief, they asked this court to find Joseph Harrelson guilty of domestic battery. In fact, the defendants indicated the court can stop right there after reading the alleged domestic battery occurred based on the police report. But Landers doesn't support that position. Landers says you need a conviction to rely off that in an administrative hearing. Defendants further cite Miles for the proposition that you can use police reports. But the Miles court specifically stated that police reports were hearsay. And the Miles court said that while other courts might have used different approaches, all courts have required that police reports, if they are going to be used, they must be Here, this police report is layered with double and triple inference hearsay. That is, someone told the officer something that someone else said, or someone told the officer something. Not officer saw head through the drywall, as alleged in the police report. So even under the defendant's case law, the police report fails. So Miles and Landers actually support Joseph Harrelson's position, and these are appellate court decisions, not Supreme Court decisions. The Supreme Court in Grand Laker controls. Defendants also cite Abrahamson, which is a Supreme Court decision. There a doctor was applying, or a doctor who wanted to be, excuse me, a medical student who wanted to be a doctor was applying for a license. The court held that because there was hearsay evidence used, and other competent evidence in the hearing, that the hearsay evidence was harmless, more or less. And the position in Abrahamson was, and I'll quote the court, where hearsay evidence appears in the record, excuse me, the Abrahamson court basically said, where there was other competent evidence in the record to support the agency's decision, that hearsay evidence will not demand reversal. Cited in my brief was Kurdy, where there was no other competent evidence, and in the Kurdy decision the court said, where hearsay evidence appears in the record, it may not be considered in reaching a decision, and any factual determination based upon hearsay, and unsupported by quote, other competent evidence, must be reversed. That is Joseph Harrelson's position with respect to this hearsay police report. Certainly at a hearing, Joseph Harrelson could argue, cross-examine that police officer, and that dovetails into the due process argument, which I'll get to in a moment, but I would be remiss if I didn't address the Illinois Administrative Procedures Act next in my argument. The Illinois Administrative Procedures Act requires there be a hearing on contested cases. Defendants have alluded that Mr. Harrelson hasn't shown the Concealed Carry Licensing Review Act is applicable, in other words, that there's no contested case. However, section 66-20, the act that creates the board, the Concealed Carry Licensing Review Board, states in paragraph D that the Concealed Carry Licensing Review Board will create code to have hearings, use the word hearings, in the creation of the Concealed Carry Licensing Review Board. Now, in the administrative code for the CCLRB, and I'm going to use that for short so I don't get tongue-tied, which is the board, they say the board can decide if they're going to have hearings, and the board must vote, and at least four members of the board must agree to have a hearing, and furthermore, the board can decide what the hearing's going to be on, basically the basis of the hearing. So if Joe Harrelson wanted to challenge the police report, Joseph Harrelson was not within his right to challenge that. The board would have to say, you may challenge the police report, which, again, hints around the issue of due process, but I'll table that for a second. Sticking with the APA, section 90 of the same act indicates an intention for the board to be governed by the APA. The board's own internal guidance in section 1231.170C3 states, on appeal, the board must be governed by the concealed carry licensing act, which will be governed by SPI, the LCS 100, article 10, which is the contested case provision. I cited a case known as Fitch in my brief, which basically states, the court held, even though the act doesn't specifically say you're going to be governed by the contested case provision, the court can infer, based upon the administrative code and the statute provision enabling the board or the agency, that they will be governed by the contested case provision. And the contested case provision would require Joseph Harrelson to have, basically, a hearing where he can cross-examine the witnesses presented against him. So plaintiff's position is the APA applies, this is a contested case. As previously briefed, contested cases include licenses, which is what this is. Should the court find that it does not apply, that Joseph Harrelson is not entitled to a license, then we're left with the due process arguments. And the due process arguments have been previously briefed, and I will go through some of the points raised by defendants in summary. But first we must understand that the right to carry a gun, according to McDonald, the United States Supreme Court, is a fundamental right. The court stated, it is clear that the framers counted the right to keep and bear arms among those fundamental. In other words, your right to bear arms is a fundamental right. And in that McDonald decision, it quoted Heller many times, and Heller was the landmark gun rights decision where they struck down the Washington, D.C. law saying you can't have guns in your home, basically. McDonald used the 14th Amendment to incorporate that upon the states. So it is clear that the federal government holds your right to bear arms and your right to keep arms a fundamental right. Where did these constitutional issues arise in this case? The timing of them. Yes, Your Honor, and they arrived at the circuit court level. Where at the circuit court level, when in the process? In the process, and I understand where you're going, in the process of the oral arguments, the On the motion to reconsider. Your Honor, I would posit respectfully that they were raised at the initial argument of not the motion to reconsider, rather the initial argument on the briefs. Judge Pistorius indicated there were two instances where due process was raised. The first, in the beginning of the brief, or the argument, Judge Pistorius said I'm not going to hear those. Later on, I attempted to raise those again, and Judge Pistorius said I'm not going to raise those. At that point, I was attempting to raise Judge Pistorius on the issue of fairness in the evidentiary hearing, but I understand, and creatively, defendants have argued that that was waived because it wasn't raised in front of Judge Pistorius. My counter-argument to that would be, had I not raised that at all in the circuit court, I would still have the opportunity to raise it here because Joseph Harrelson wasn't granted a hearing before the administrative agency, and as I briefed, the case law indicates that you raise those issues before the administrative agency at a hearing. Here, Joe Harrelson wasn't allowed a hearing to raise those issues, and it's cited in my reply brief. Could he raise them in the documents that he submitted? I respectfully request or posit to the court that the way the statutory scheme or framework of this works is, the board takes the objection in from the law enforcement. If they sustain that objection, they give Joseph Harrelson 15 days to submit evidence, not argument. So Joseph Harrelson submits evidence, and if you look at that, and certainly when I was in this case in the beginning, I thought this is an interesting discovery tool where all the evidence is presented before the board, and then there's a hearing. Well, the hearing is then determined by the board. They get to decide that. So if they don't want to hear those arguments, they don't have to. In this case, they didn't. So Joseph... Was there a request for a hearing made? No, Your Honor. What was presented was affidavits. Again, the statute was very clear that the person applying for the license, if they receive the 15-day notice, is to present evidence in opposition, and I don't have the statute in front of me that... Or the code in front of me. What would prevent someone from requesting a hearing? I don't think anything, but the statute or the administrative code says they will only consider evidence properly before the board. So if I were to present argument or evidence, I read that statute to mean that it won't be considered by the board because it's not evidence countering the objection from law enforcement or various other objections. There was a petition file, an amended petition, and a memorandum of law. If I look at those, will I see constitutional issues being raised? No, in the initial... You meant the circuit court, Your Honor. No, in the circuit court petition, I did not raise constitutional arguments, and I can see... And did you supplement that with a memorandum of law? I did not. The first time that those were, the constitutional issues were raised, was at the circuit court oral arguments. Did you submit a memorandum of law? With respect to my brief, Your Honor, I did. Or, excuse me, the petition was supplemented with a memorandum we both briefed. The Attorney General's office... Was there anything in the memorandum of law that made reference to constitutional issues? No, not unless they tangentially hit on the cases that were supplemented. Okay. And, again, I would fall back to my position in my reply brief where case law has shown that the proper place to raise that would be the administrative body. In other words, you raise it in the administrative body. Here, there wasn't an opportunity to raise that before the administrative body, such that even if it hadn't been raised at the circuit court at any point before the motion to reconsider, I'm confident that they would be able to raise it at some point before... Oh, I'm sorry. At some point before the case was disposed of. So, the due process argument with respect to the fundamental, right, and defendants cited at page 32 of their brief that McDonald was basically saying that they were affirming Heller, and that's true. Defendants said McDonald was trying to say that the fundamental right bears towards the home. However, in McDonald, they were simply quoting Heller when Heller said the decision, this is affecting the home. And that Heller decision was about gun rights in the home as opposed to out on the street. The McDonald court systematically throughout their decision used the words right to bear arms and right to keep arms. And those are separate methods of carrying, keeping arms referencing the home, bearing arms meaning out on the street. Because it's a fundamental right, plaintiffs would posit that he was afforded more process than he was given. In other words, he should have had a right to a hearing on that. And along that due process note, plaintiffs would assert that the case law from the Supreme Court demonstrates that clear and convincing evidence standards should be used with this law, because it is a fundamental right. And plaintiffs cite several cases from the Supreme Court where fundamental rights were determined that clear and convincing evidence should be used to deny those folks those rights. Defendants cite Barron v. Illinois Concealed Carrying Licensing Review Board, and that's a appellate from the Seventh Circuit appeal. There the court said that the state could assign the burden to either party, and that would be in juxtaposition of what the Supreme Court said with fundamental rights, and that's the Sandusky line of cases that were cited in the briefs. So, if that were true, then the Seventh Circuit would be overruling the Supreme Court, and I think that's a misinterpretation of what the Seventh Circuit was saying. But more so, Mr. Harrelson relied upon the Supreme Court's decision in People v. Aguilera where they affirmed the Seventh Circuit's initial ruling in Moore that the right to bear arms is a fundamental right, and a right that should be used outside the home. So, even if Barron stands for what defendants meet or defendants purport it stands for, we still have the Supreme Court holding that Moore is good law, and the Supreme Court has not changed its opinion on that issue. And I will certainly reserve my time for rebuttal. Thank you, counsel. May it please the Court, I'm Valerie Quinn, Assistant Attorney General on behalf of the concealed carry licensing board. Thank you. May I assume that it's proper for me to also argue Barron, which was the subject of our motion, to cite additional authority since the appellant is in reference to it. Yeah, I think we allowed that motion. Thank you. Your Honors, the board had to evaluate materials submitted by Mr. Harrelson, along with materials from the New Jersey County Sheriff's Office, and from those, determine whether it would be dangerous for him to carry a gun outside of his home. And so the board had in front of it evidence of a violent assault by Mr. Harrelson on his ex-girlfriend in front of her children. And it had his and her, after the fact, denials. And the board's task here was to make a predictive judgment about whether it would be dangerous to let him carry a loaded weapon in public. Certainly, uppermost in the board's mind would have been the idea that the outcome of the incident with Ms. Greer could have been very different if Mr. Harrelson had been harmed when he was angry enough to choke her in front of her kids. He has argued throughout this case that the materials submitted by Jersey County were somehow unreliable because they were unsworn. But if you look at those materials, it's fairly plain that it's a computer-generated compilation of original documents and photographs that Deputy Ayers generated. And leaving aside whether the originals were sworn to or not, in this case, the victim didn't want to press charges right away. She thought about it for a few hours, and she called Deputy Ayers later on. So what that meant is that Deputy Ayers had to go in front of a judge and swear to the evidence that's contained in the incident report in order to get the arrest warrant for Mr. Harrelson. So the argument that these are somehow unreliable documents or that the information in them is somehow unreliable is misplaced. Mr. Harrelson has cited, too, the Grand Liquor case. That was a case involving a hearing on tax proceedings in which no foundation, basically, was laid for the evidence that they were trying to get in. No one could tell who had put that information into the computer, whether the program was accurate. There's no way to test it. That's a very different situation from what we have here. We know who wrote the incident report. We know his badge number. We know his name. We know his partner's name. We have detail in the incident about what he observed and what was communicated to him by all the parties, including the kids. And there's photographic evidence to support the allegations. So this is information the board could and do rely on. And Mr. Harrelson has argued at great length that his own evidence was superior to Jersey County's. And that's a classic invitation to re-weigh evidence on administrative review that they should. It is interesting to note that the same court that gave us Moore and stated its mandate to give the state 180 days to craft this law to allow people to carry guns outside their homes, subject to reasonable limitations, that same court has recently rejected the challenge to this licensing framework. Nothing in the U.S. Supreme Court, the Seventh Circuit, or the Illinois Supreme Court of Jurisprudence, precludes requiring additional conditions, qualifications, for somebody to carry a weapon outside his home. There are different degrees of danger. And the Seventh Circuit has recognized that. The Administrative Procedure Act, Your Honor, explicitly states, and this court has held, that the provisions concerning contested cases apply only when licensing is required by law to be preceded by notice and an opportunity for a hearing. That's right in Section 1065. The APA does not itself provide an independent basis for a hearing when that's not in the statute under which the agency is operating. With respect to the Landers and Miles cases, Your Honor, those were not incident reports that were rejected in those cases. Those were criminal histories. First of all, in the Miles case, the appellant didn't provide any record of the hearings below. So these allegations were rejected because of that. The appellant's burden to provide a proper record. And the arrest record in the Miles case was just, you know, name, the type of offense, the date it was disposed of. Just a bare bones arrest history. That's very, very different. Same with Landers.  Do you know anything about Secretary of State hearings and suspensions and revoking or reinstating driving privileges? In driving privileges? Well, I mean, they have hearings there where you call witnesses. I mean, you have hearings. Right. I have not handled one of those cases. But you would agree with my suggestion, or do you have sufficient knowledge to agree with my suggestion that hearings are conducted there? I imagine hearings perhaps are conducted there. And by hearings, I mean witnesses. An in-person hearing as opposed to a paper hearing. Examination and cross-examination. Yes. What would happen in this administrative proceeding if an applicant requested a hearing? Requested a hearing where there were live witnesses and they were represented by counsel. You didn't just submit documents. That probably would depend on the type of materials that were already in the record and whether the board felt that there were credibility issues that The act was drafted in response to the Moore decision, and it was pretty much designed to make a streamlined process out of it. So the department has 90 days to give an up or down decision. And they can and do grant and deny. And then a subset of those cases go to the board when a law enforcement agency objects. The department gets something over 5,000 applications a month. It has had as much as 11,000. Now, not all of those go to the board, but certainly a subset do. So it's going to be an unusual case probably in which the board is going to determine that a hearing is, in fact, necessary. Is the board ever going to determine a hearing is necessary unless somebody asks for one? Oh, probably so. You could have a situation where somebody has a stolen identity, which may sound silly except I've actually seen a couple of those cases back when I was a public defender. A sibling, you know, good bear, bad bear, and one sibling gets a conviction under, you know. Then you have issues of credibility. You may have issues of, you know, fingerprint evidence to be resolved. Or you could imagine, you could imagine this case playing out a little bit differently. Let's say a neighborhood is fighting. Call the police. Police show up. They don't give any statements. Neither Harrelson nor Miss Beard give any statements. And the children aren't interviewed. So the police write up what they see of her injuries. The case goes forward. It gets disposed of. Now at that point, if there's no statements in the record from them and they submit affidavits after the fact, at that point you might well want a hearing because you would have credibility issues to be determined. Here you really don't. I don't understand that. You're saying there's no credibility determination here when you have the statements that are originally taken from the alleged victim with the new affidavit? To me, it's all about which is credible, what was said to the police when they first investigated or what the new sworn statement says. So this would appear to me to be a case where credibility determinations are critical to the outcome. And yet, no hearing. That's true, Your Honor. I was thinking credibility in terms of, you know, the fact finder makes credibility determinations when people are testifying in front of him or her. I was hesitant to use that term when it's documentary evidence. I was thinking more along the lines of the board made a determination as to one set of documents was more reliable and persuasive than the other. Just because it's a little hard when it's not an in-person hearing. Whether the statement to the police was true or whether the new affidavit was true was critical to the outcome of this case, wasn't it? Why wouldn't they want the person who did the affidavit to appear in front of them so they could make sure they came to the right conclusion as to what really happened on the night in question? To me, that just makes common sense. I think the way this case presented itself when you had both Mr. The sheriff's deputy got there shortly after the incident, and the first thing he did was interview Mr. Harrison. And Mr. Harrison told him straight up what happened. Detailed account. Yes, he admitted the assault. He admitted throwing her at the wall. He then switches places with the other deputy and goes to interview Ms. Beer, and she supports his account entirely. Plus there's corroborating evidence from the children, and there's photographs. There is so much corroboration just in these documents, Your Honor, that the board could well determine that really we don't need a hearing to sort this out. We have enough already. Particularly when there's probably I don't know how many cases behind it. These are short deadlines that the board is under. It's 30 days, and the board can ask for another 30 days, and the person can waive the deadline. But there's so many applications that if every one of them had to have, or if many of them had to have a full-blown evidentiary hearing, it would take a lot longer in the process of meeting. Well, if it's that clear, then the victim who signed the affidavit could be charged with perjury then, right? Anyone who makes a false statement. Under oath. Under oath. Could, in fact, be charged with perjury. It was that clear then? I'm sorry? It was that clear? It was that clear. Okay. Any other questions? Thank you, counsel. Thank you. Rambo? Thank you again. May it please the Court. The Grand Laker decision did not make the distinction that defendants are trying to make. The distinction was hearsay document without foundation. Can't use it to administrate agents. There's got to be some supporting credibility behind it. So I reaffirmed that. The Barron decision didn't even address the APA or what I'm challenging, which is the hearsay. Regarding Miles, counsel indicated the Miles decision was based because there was no record before the review in court. Well, here we have no record of what was before the administrative agency. All we have is a decision that they said, by preponderance of the evidence, we find that you be a danger to yourself, others to the community. That's it. There was certainly what we would call evidence before the board, but there was no finding of fact on that evidence. And all of that evidence, I would argue, is hearsay. So, again, Miles supports Mr. Harrelson's position. There was no record of the board's decision. I would note that credibility here is clear. There was credibility issues. But, again, the police report itself is one layer of hearsay. If someone was going to say something other than the person writing that hearsay document, that's double inference hearsay. If someone told someone else something to put in the report, that's triple inference hearsay. So I'm not attempting to reweight credibility. That would be improper. I'm not asking the court to do that. I'm saying that in a vacuum, these are hearsay documents with triple and double inference hearsay such that can't be relied upon, and the Kurdi decision makes clear that. If you're relying just on hearsay in making an administrative decision, that's all we have here, it must be reversed. I thank you, this court, for your time. Thank you. We'll take the matter under advisement.